UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No.:    #2007-cr-102 |
| Plaintiff, | Honorable Paul L. Maloney |
| v. | |
| MICHAEL DANOTUS YOUNG, | |
| Defendant. | |

---

# OPINION

**Holding that the Defendant is Eligible for a Sentence Enhancement
under the Armed Career Criminal Act**

On April 17, 2007, the federal government issued an indictment charging Michael Danotus Young with one count of being a Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1). Young was arrested on August 2 and pled not guilty before Magistrate Judge Brenneman on August 7. He has been imprisoned since his arrest, and on September 5, Magistrate Judge Brenneman denied his motion for bond. Young filed a motion to suppress evidence on August 28, the prosecution filed an opposition brief on September 26, and Young filed a reply brief on October 2. Following a hearing on October 3, this court denied Young's motion to suppress.

The prosecution filed a notice of intent to seek a sentence enhancement under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 921(a), and on October 11 Young filed a motion

-1-

seeking a ruling that he is not eligible for such an enhancement. The prosecution filed a brief in support of an ACCA enhancement on October 26, and Young filed a reply brief on October 29. Following a hearing on November 1, this court orally denied Young's "motion to dismiss" the ACCA enhancement notice and ruled that Young is eligible for an ACCA enhancement. This opinion sets forth the rationale for that ruling.

## BACKGROUND

At 1:20 in the morning in December 2006, Grand Rapids police in a marked car were patrolling the area around Julian's Bar when they saw a man seated in the passenger seat of a car parked in a public lot where loitering is not permitted. Officer Fannon approached the car and asked for the man's identification; the man provided his identification, which stated that he was Michael Young, and said he had fallen asleep while his friend went into the bar. In response to questioning, Young said that he did not have drugs on his person, but he continually patted and touched the left side of his pants and jacket, which the officer knew from experience suggested he might have drugs or a weapon there.

Officer Fannon asked Young to get out of the car. Young did so and immediately said "I got a gun in my pocket." As Fannon was placing Young's hands on the car and getting ready to frisk him for the gun, the other officer stated that a computer records check revealed an outstanding bench warrant. The officers arrested Young, searched him, and found a handgun. After being read his *Miranda* rights, Young admitted that the gun was his and that he had purchased it from "kids" on the street for self-defense.

## LEGAL STANDARD: THE ACCA

The ACCA, title 18 U.S.C. § 924(e)(1) provides, in pertinent part, "In the case of a person

who violates section 922(g) of this title and has three previous convictions for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years . . . ." The ACCA defines a violent felony as a felony, i.e., a crime punishable by a term of imprisonment exceeding one year, that

> (I)  has an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another . . . .

18 U.S.C. § 924(e)(2)(B).[1] The prosecution has the burden of establishing that a conviction qualifies

---

[1]

U.S. Sentencing Guideline § 4B1.2 defines "crime of violence" as any felony that:

> (I)  has an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary <u>of a dwelling</u>, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another . . . .

Emphasis added. With the exception of the three underlined words in U.S.S.G. § 4B1.2(ii), this Guideline text's definition of "crime of violence" is identical to the ACCA's definition of "violent felony." *See US v. Arnold*, 58 F.3d 1117, 1121 (6th Cir. 1995) ("The definition of a violent felony [in the ACCA] is nearly identical to the definition of a crime of violence used in the Guidelines.").

*Accord US v. Taylor*, 489 F.3d 1112, 1113 (11th Cir. 2007) ("[O]ur cases interpreting 'crime of violence' under § 4B1.2 provide important guidance in determining what is a violent felony under the ACCA 'because the definition[s] for both terms are virtually identical.'") (citation omitted); *US v. Ladwig*, 432 F.3d 1001, 1005 n.9 (9th Cir. 2005) (noting that the court can consult cases construing § 4B1.2 when considering whether a crime is violent under the ACCA because the ACCA's definition of "violent felony" is identical to this Guideline's definition of "crime of violence"); *US v. Johnson*, 417 F.3d 990, 996-97 (8th Cir. 2005) ("The statutory definition of 'violent felony' is viewed as interchangeable with the guidelines definition of 'crime of violence." Therefore, in determining whether a defendant qualifies as an armed career criminal under the ACCA, we are bound by case law defining a crime of violence under § 4B1.2.").

for an ACCA enhancement. *US v. Lancaster*, 501 F.3d 673, –, 2007 WL 2457448, *1 (6th Cir. 2007) (Griffin, J.) (citing *US v. Hargrove*, 416 F.3d 486, 494 (6th Cir. 2005)).

First, whether a defendant has a prior conviction is a factual determination that the district court makes by a preponderance of the evidence. *US v. Chisom*, – F. App'x –, –, 2007 WL 2860896, *4 (6th Cir. 2007) (citing *Almendarez-Torres v. US*, 523 U.S. 224, 230 (1998)).[2] Defendant Young does not dispute that he has three previous convictions, and the Sixth Amendment is not offended by a judicial, rather than jury, determination of that fact. *See US v. Perkins*, – F. App'x –, –, 2007 WL 2692326, *5 (6th Cir. 2007) (Griffin, J.) ("Finally, Perkins contends that her Sixth Amendment rights were violated by the application of the ACCA because her prior convictions were not proved to the jury beyond a reasonable doubt. This argument is foreclosed by *United States v. Barnett*, 398 F.3d 516, 524-25 (6th Cir. 2005) . . . .") (citing, *inter alia*, *James v. US*, – U.S. –, –, 127 S.Ct. 1586, 1600 (2007) ("To the extent that [defendant] contends that the simple fact of his prior conviction was required to be found by a jury, his position is baseless . . . . [W]e have held that prior convictions need not be treated as an element of the offense for Sixth Amendment purposes.")).

Second, "'a career offender is one convicted of three criminal episodes. An episode is an incident that is part of a series, but forms a separate unit within the whole. Although related to the entire course of events, an episode is a punctuated occurrence with a limited duration.'" *US v. Perkins*, – F. App'x at –, 2007 WL 2692326 at *4 (quoting *US v. Graves*, 60 F.3d 1183, 1185 (6th Cir. 1995) (citation and internal quotation marks omitted)). Defendant Young does not dispute that

---

[2] The Supreme Court's decision in *Booker* permits the court to continue making such determinations: "In *United States v. Beasley*, 442 F.3d 386 (6th Cir. 2006), we held that the district court does not violate the Sixth Amendment 'by determining the fact and nature of a defendant's prior convictions and using those findings to impose an increased sentence under the Armed Career Criminal Act.'" *US v. Miller*, – F. App'x –, –, 2007 WL 2478643, *1 (6th Cir. 2007).

his three prior convictions constitute different episodes, i.e., offenses that were, in the words of the statute, "committed on different occasions."

### DISCUSSION: DETERMINING WHEN A FELONY IS "VIOLENT"

<u>The Michigan Fleeing and Eluding Statute</u>

Young contends, however, that his prior conviction for fleeing and eluding in violation of former Michigan Compiled Laws section 257.602A3(3), does not constitute a "violent felony" for purposes of the ACCA.  Prior to amendments enacted in 1996 (effective 1997), M.C.L. § 257.602A3 provided, in pertinent part,

> (1)   *A driver of a motor vehicle who is given by hand, voice, emergency light, or siren a visual or audible signal by a police or conservation officer, acting in the lawful performance of his or her duty, directing the driver to bring his or her motor vehicle to a stop, and who willfully fails to obey that direction by increasing the speed of the motor vehicle, extinguishing the lights of the motor vehicle, or otherwise attempting to flee or elude the officer*, is guilty of a misdemeanor, and shall be punished by . . . .  The court may depart from the minimum term of imprisonment . . . .
>
> (2)   Subsection (1) does not apply unless the police or conservation officer giving the signal is in uniform, and the vehicle driven by the police or conservation officer is identified as an official police or department of natural resources vehicle.
>
> (3)   *A person who violates subsection (1) within 5 years of a prior conviction of a violation of subsection (1) is guilty of a felony . . . .*
>                         * * *
> (6)   As used in this section, "serious bodily injury" means serious impairment of a body function or permanent serious disfigurement.

Emphasis added.[3]  Young was convicted of violating former M.C.L. § 257.602A3(1); because he committed that offense within five years of a prior conviction for violating that same subsection,

---

[3]

The version of this statute in effect at the time of Young's prior conviction was enacted by P.A. 1966, No. 299, § 1 (effective March 10, 1967) and was amended by P.A. 1988, No. 407, § 1 (effective March 30, 1989).

M.C.L. § 257.602A3(3) converted the offense into a felony.

### The Categorical Approach to Determining When a Crime is Violent

According to the Supreme Court's instructions in 1990, in determining whether a defendant's prior offense was a violent felony for purposes of the ACCA, the courts should take "a categorical approach, 'looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions . . . .'" *Lancaster*, 501 F.3d at –, 2007 WL 2457448 at *1 (Griffin, J.) (quoting *Taylor v. US*, 495 U.S. 575, 600 (1990) and citing, *inter alia*, *US v. Flores*, 477 F.3d 431, 434 (6th Cir. 2007) (Griffin, J.)). *Taylor* also permitted courts to look to "the charging paper [indictment or information] and jury instructions." *US v. Collier*, 493 F.3d 731, 733 (6th Cir. 2007) (citing *Taylor*, 495 U.S. at 602).

In 2005 the Supreme Court "slightly expanded the range of sources a court may consider in determining whether a particular offense constitutes a violent felony." *Collier*, 493 F.3d at 733. Although a court determining the nature of a prior conviction "may not look to 'police reports or complaint applications,'" it generally may go beyond the statutory definition to examine the "'charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented.'" *Collier*, 493 F.3d at 733-34 (quoting *Shepard v. US*, 544 U.S. 13, 16 (2005)). The extra-statutory sources are sometimes referred to as "*Shepard* sources."

### Our Circuit Holds that Third-Degree Fleeing and Eluding is Violent: *Martin* (2004)

It does not appear that any federal court has addressed whether fleeing and eluding under the pre-1996 Michigan statute constitutes a *violent* felony as required for an ACCA predicate

conviction.  However, our Circuit held, in a published opinion, that a defendant's conviction for *third*-degree Michigan fleeing and eluding – under a later but materially identical statute – constituted a crime of violence that supported an ACCA enhancement.

In *US v. Martin*, 378 F.3d 578 (6th Cir. 2004) (Siler, Daughtrey, & Sutton, JJ.), the defendant (like Mr. Young here) pled guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g).  The prosecution in *Martin* sought to enhance the sentence based on U.S.S.G. § 2K2.1(a)(4)(A), which sets a base offense level of 20 for unlawful possession of firearms if the defendant committed any part of the offense after being convicted of a felony "crime of violence" or "controlled substance offense."  *Martin*, 378 F.3d at 581.  Guidelines section 2K1.2's Application Note 5 adopts U.S.S.G. § 4B1.2(a)'s definition of "crime of violence" as any felony that

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, or involves conduct that presents a serious potential risk of physical injury to another.

Guidelines section 4B1.2(a)'s Application Note 1 expands the list of enumerated offenses that constitute "crimes of violence" to include murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling, and it reiterates that other offenses count as violent crimes if they, by their nature, presented a serious potential risk of physical injury to another.

Because neither U.S.S.G. § 4B1.2(a) nor its application note named fleeing and eluding as a crime of violence, the *Martin* panel held that Martin's conviction for Michigan third-degree fleeing and eluding would constitute a crime of violence only if it had as an element the use, attempted use, or threatened use of physical force, or if presented a serious potential risk of physical injury to another.  *Martin*, 378 F.3d at 581.  Applying the categorical approach, the panel looked to the

statutory definition, not the underlying facts regarding the offense. *Id.*

The *Martin* panel looked at the version of the Michigan fleeing-and-eluding statute (M.C.L. § 750.749a) that was in effect after the 1999 amendment but before the 2003 amendment, because Martin's prior fleeing-and-eluding conviction occurred during that period. The 1999-2003 version of M.C.L. § 750.749a provided that "[a] driver of a motor vehicle who is given. .. [a] signal by a[n] officer . . . directing the driver to . . . stop shall not willfully fail to obey that direction by . . . , or otherwise attempting to flee or elude the . . . officer." *Martin*, 378 F.3d at 581 (quoting M.C.L. § 750.749a(1)). The 1999-2003 version of M.C.L. § 750.749a further specified that a person commits fleeing and eluding in the third degree if the violation results in a collision or accident, if it occurred in an area where the speed limit is less than 35 miles per hour, or if the defendant has a previous conviction for actual or attempted fleeing and eluding or similar misconduct. *Martin*, 378 F.3d at 581 (citing M.C.L. § 750.749a(3)).

The panel found that the Michigan third-degree fleeing and eluding statute did not contain as an element the actual, threatened, or attempted use of force, so the offense was not a violent crime under the first of the Guidelines' two tests. *Martin*, 378 F.3d at 582.

Therefore the panel considered whether Martin's conviction for Michigan third-degree fleeing and eluding statute could constitute a violent crime under the second of the Guidelines' two tests – posing a "serious potential risk of physical injury to another" person. *Martin*, 378 F.3d at 582 (citing U.S.S.G. § 4B1.2(a)(2)). The panel found that the statute did not conclusively answer that second inquiry either, so it looked *beyond the statutory definition* of the offense to determine whether Martin's third-degree fleeing and eluding posed a serious potential risk of physical injury to another person. *Martin*, 378 F.3d at 582. As the panel explained, "[i]f the relevant statute of

conviction does not supply a clear answer to these inquiries . . . the sentencing court may consult the indictment and either the jury instructions or plea agreement for the specific conduct with which the defendant was charged in order appropriately to characterize the offense." *Martin*, 378 F.3d at 581-82 (citing *US v. Kaplansky*, 42 F.3d 320, 322 (6th Cir. 1994) (en banc) and *US v. Bass*, 315 F.3d 561, 565 (6th Cir. 2002)).

The panel held that Martin's conduct of third-degree fleeing and eluding *did* pose a serious potential risk of physical injury to another person, thereby qualifying that prior conviction as an ACCA predicate:

> When a motorist disobeys an officer and flees in his car, whether by increasing his speed, extinguishing the car's lights or by otherwise attempting to flee, that person creates a conspicuous potential risk of injury to pedestrians, vehicles sharing the road, passengers in the fleeing car and the pursuing officer. *See United States v. Howze*, 343 F.3d 919 ,922 (7th Cir. 2003) (noting that with the offense of flight, bystanders are in particular jeopardy and collisions between fleeing vehicles and pedestrians or others who get in the way are common). That Martin committed this offense either by causing a collision or accident, Mich. Comp. Laws § 750.479a(3)(a), or by fleeing in a 35-mile-per-hour zone (presumably a residential or school area), *id.* § 750.479a(3)(b), confirms the palpable risk of physical injury to others caused by flight under the statute.
>
> At the same time that flight itself creates a risk of injury to others, so too does the suspect's eventual apprehension. By making a deliberate choice to disobey a police officer, the motorist provokes an inevitable, escalated confrontation with the officer. In this regard, fleeing and eluding resembles escape, *see Howze*, 343 F.3d at 921-22; *United States v. James*, 337 F.3d 387, 391 n.4 (4th Cir. 2003), which nine courts of appeals (including this one) have agreed constitutes a "crime of violence" under the Guidelines, regardless of whether the defendant forcefully [sic, forcibly] escaped from a maximum security prison or walked away from a halfway house.[4] * * * Such

---

[4]

*US v. Collier*, 493 F.3d 731 (6th Cir. 2007) held that a defendant's prior conviction for Michigan prison escape was not a violent felony under the ACCA, because that offense was not categorically violent and the *Shepard* sources showed that it was not violent in the particular case.

In the absence of binding precedent on the question of when Michigan fleeing and eluding is a violent crime, *Collier*'s discussion of Michigan escape might be instructive – given the arguable

> a confrontation "inherently presents the serious potential risk of physical injury" because the fleeing driver "intent on his goal" of eluding the officer "faces the decision of whether to dispel the [officer's] interference or yield to it." *United States v. Dickerson*, 77 F.3d 774, 777 (4th Cir. 1996).
>
> Indeed, fleeing and eluding in most settings will pose a greater risk of injury than escape. *Howze*, 343 F.3d at 922. While an escape and fleeing alike involve the potential for dangerous confrontation between the suspect and police officers, not all escapes involve flight and the inherent third-party risks that such conduct entails. *Id. Because fleeing and eluding an officer while in a car generally will present serious potential risks of physical injury to third parties – the only relevant inquiry – it necessarily qualifies as a "crime of violence" under the Guidelines.*
>
> \* \* \*
>
> *That the Michigan fleeing and eluding statute may be violated by conduct that is passive, non-violent, and non-threatening does not demand a different conclusion. The Guideline defines offenses presenting a "serious potential risk of physical injury" as crimes of violence; it does not require that actual injury or violence occur or even that the risk of injury materialize in a given case.* \* \* \* To require crimes of violence in all fact patterns to lead to a violent or harmful end not only would ignore our categorical approach to this inquiry, but it would also read the "serious potential risk of physical injury" language out of the Guideline.

*Martin*, 378 F.3d at 582-83 (brackets, quotation marks, alterations, and other internal citations omitted) (emphasis added).  *See also US v. McGhee*, 161 F. App'x 441, 450 (6th Cir. 2005) (C.J.

---

similarities between the two offenses – even though *Collier* does not address the precise issue before this court. *Cf. generally Kusens v. Pascal Co., Inc.*, 448 F.3d 349, 358 (6th Cir. 2006) ("Although not direct toward the precise issue presented here – whether the district court's failure to rule upon an alternative motion for new trial deprives this Court of appellate jurisdiction – these decisions are instructive as to how appellate courts have viewed such inaction by the district court.").

But *Martin* provides such binding precedent. *Martin* addresses a variant of the very offense committed by defendant Young (fleeing and eluding), while *Collier* merely addressed an arguably similar or analogous offense (escape). Therefore, to the extent that *Collier* employs different reasoning or implies a different conceptual approach than *Martin*, this court must follow *Martin*, because it much more closely addresses the precise issue *sub judice*. *Cf., e.g., US v. Allison Engine Co., Inc.*, 471 F.3d 610, 620 (6th Cir. 2006) ("None of the cases, however, address the *precise* issue before this court, and we find them unpersuasive in the present case.") (emphasis added), *cert. granted on other grounds*, – U.S. –, – S.Ct. –, 76 U.S.L.W. 3073 & 3219, 2007 WL 2374900 (U.S. Oct. 29, 2007) (No. 07-214); *Brock v. UAW*, 889 F.2d 665, 691 (6th Cir. 1989) ("A situation more closely analogous to the facts of this appeal was presented in . . . .").

Boggs, Norris, Cook) ("[T]he sentencing hearing transcript reveals that the district court comported with this guidance [the categorical approach to determining the nature of an offense for ACCA purposes] to the letter, considering the elements of the crimes of conviction without speculating about the actual circumstances. Furthermore, this court has held that, because the Michigan fleeing-and-eluding statute increases the 'serious *potential* risk of physical injury,' it meets the Guidelines' definition of a 'crime of violence.'") (citing *Martin*, 378 F.3d at 583) (emphasis in original)); *US v. Richardson*, 437 F.3d 550, 556 (6th Cir. 2005) ("It is settled that both of Richardson's prior convictions under Michigan law, fleeing and eluding and larceny from a person, are considered crimes of violence for the purpose of sentencing.") (citing *Martin*, 378 F.3d at 580).[5]

*Martin* Compels a Ruling in Favor of ACCA Enhancement Here

***Martin* has never been modified or overruled by our Circuit sitting *en banc*. Its holding and reasoning compel this court to hold that Young's offense under the former fleeing and eluding statute constitutes a crime of violence for purposes of the ACCA.** As noted above, the statute under which Young was convicted, former M.C.L. § 257.602A3(3), is *materially* identical

---

[5]

*Cf.* decisions holding that felony fleeing and eluding under the laws of other states constituted a violent crime for purposes of the ACCA or U.S.S.G. § 4B1.2:

*US v. Orisnord*, 483 F.3d 1169 (11th Cir. 2007) (Florida statute), *pet. cert. filed*, – U.S.L.W. –, 2007 WL – (U.S. Oct. 11, 2007) (No. 07-7070);

*US v. Kendrick*, 423 F.3d 803, 809 (8th Cir. 2005) (Oregon statute);

*US v. Rosas*, 410 F.3d 332, 335-36 (7th Cir. 2005) (Wisconsin statute);

*Powell v. US*, 430 F.3d 490 (1st Cir. 2005) (Maine statute that prohibited driving at a reckless rate of speed to elude a police car that has its blue light and siren activated), *cert. denied*, 547 U.S. 1047 (2006).

to the version of M.C.L. § 750.749a analyzed in *Martin*.

It is true that Martin's prior conviction was for *third-degree* fleeing and eluding – which requires that the defendant's attempted flight/elusion either (1) resulted in a collision or accident or (2) took place in an area where the speed limit was 35 miles per hour or lower, or (3) he had a prior conviction for fourth-degree fleeing and eluding, *see* M.C.L. § 750.479a(3). By contrast, Young's prior conviction was under a statute, former M.C.L. § 257.602A3(3), which did not require proof of any of those three elements. This difference, however, does not bring Young's case outside the purview of *Martin*, because *Martin* held that Michigan fleeing and eluding *inherently* presents a serious potential risk of physically injuring someone else and therefore *necessarily* qualifies as a violent offense:

> When a motorist disobeys an officer and flees in his car, whether by increasing his speed, extinguishing the car's lights or by otherwise attempting to flee, that person creates a conspicuous potential risk of injury to pedestrians, vehicles sharing the road, passengers in the fleeing car and the pursuing officer. * * *.
>
> At the same time that flight itself creates a risk of injury to others, so too does the suspect's eventual apprehension. By making a deliberate choice to disobey a police officer, the motorist provokes an inevitable, escalated confrontation with the officer. * * * Such a confrontation *inherently* presents the serious potential risk of physical injury because the fleeing driver, "intent on his goal" of eluding the officer "faces the decision of whether to dispel the officer's interference or yield to it."
>
> * * * Because fleeing and eluding an officer while in a car generally will present serious potential risks of physical injury to third parties – the only relevant inquiry – it *necessarily* qualifies as a "crime of violence" under the Guidelines.

*Martin*, 378 F.3d at 581 (emphasis added) (internal citations, quotation marks, and alterations omitted). Based on *Martin*'s unequivocal and qualified language on this score, the court need not

resort to the so-called *Shepard* sources[6] to determine that Young's prior offense was a violent crime.

### *Foreman* (6th Circuit 2007) Cannot Dictate a Contrary Result in light of *Martin*

A recent Sixth Circuit panel vacated the imposition of an ACCA enhancement because the district court allegedly failed to conduct a proper analysis of whether a particular prior felony qualified as a crime of violence. In *US v. Foreman*, 436 F.3d 638 (6th Cir. 2007), the panel wrote:

> In *Martin*, we held that the general crime of [Michigan] fleeing and eluding had a [serious] potential risk of physical injury. 378 F.3d at 582-83. What made the potential risk serious, in that case, was the presence of the additional elements of speeding in a low speed zone or causing an accident. *Id.* at 584. Given the absence of those elements in this case, we hold that the categorical approach is not determinative of whether fourth degree [Michigan] fleeing and eluding is a "crime of violence."
>
> Therefore, we must look to the *Shepard* sources in order to further examine whether Fourth degree fleeing and eluding is a "crime of violence." 125 S.Ct. at 1259 ("the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented."). Where the facts demonstrate a *serious* potential risk of physical injury to another, then the application of the "crime of violence" enhancement is appropriate. Where the facts indicate otherwise, it is not. Because the district court found the categorical approach determinative, we must vacate its decision and remand for re-sentencing.

*Id.* at 643; *see also US v. LaCasse*, – F. App'x –, –, 2007 WL 3274456, *2 (6th Cir. 2007) (Norris, Gibbons & Rogers, JJ.) ("We subsequently limited *Martin* to cases involving third-degree fleeing and eluding convictions, however.") (citing *Foreman*).

With due respect to the *Foreman* panel's attempt to grapple with this difficult issue, it is at best unclear whether *Foreman* correctly characterizes the general holding of *Martin*. The following passage in *Martin* seems consistent with *Foreman*'s characterization:

---

[6] In any event, with the parties' briefs regarding the proposed ACCA enhancement, neither the prosecution nor the defense has submitted any *Shepard* sources regarding Young's prior conviction for Michigan fleeing and eluding.

> Even if it were true that the fourth-degree offense – which entails the same conduct as third-degree fleeing and eluding, but without the additional factor of an accident, a 35-mile-per-hour zone or a prior fleeing-and-eluding conviction, *id.* § 750.479a(2) – does not pose a serious potential risk of physical injury, as Martin alleges, case law makes clear that we must look at the conduct charged in the indictment when the statutory offense potentially covers violent and non-violent crimes. *See . . . United States v. Winter*, 22 F.3d 15, 18-19 (1st Cir. 1994) (determining that where the statutory definition of an offense encompasses both violent and non-violent crime, courts may look to the nature and object of the activity as described in the indictment and fleshed out in the jury instructions"). In this instance, Martin's indictment under the statute charged him with fleeing that caused an accident, or fleeing in a 35-mile-per-hour zone, or both.

*Martin*, 378 F.3d at 584.

But *Martin* also stated, in broad, unqualified terms, that Michigan fleeing and eluding is *inherently* and *necessarily* a violent offense, with no reference to the third-degree elements:

> At the same time that flight itself creates a risk of injury to others, so too does the suspect's eventual apprehension. By making a deliberate choice to disobey a police officer, the motorist provokes an inevitable, escalated confrontation with the officer. * * * Such a confrontation *inherently* presents the serious potential risk of physical injury . . . .
>
> * * * Because fleeing and eluding an officer while in a car generally will present serious potential risks of physical injury to third parties – the only relevant inquiry – it *necessarily* qualifies as a "crime of violence."

*Martin*, 378 F.3d at 581 (emphasis added).[7] Later in the opinion, the panel even more clearly states that the violent nature of fleeing and eluding does not depend on the presence of the third-degree elements: "Nor does it make a difference that Martin could have violated the statute by committing

---

[7]

*See also US v. Howard*, 150 F. App'x 476 (6th Cir. 2005) (Zatkoff, D.J., joined by Nelson & Sutton, JJ.), which simply and correctly characterizes the unqualified rule announced by *Martin*: "[T]he panel in *Martin* concluded that when a motorist flees the police, there is a potential risk of injury to pedestrians and others on the road, and that such an offense is a 'crime of violence' under the Sentencing Guidelines." *Id.* at 481 (holding that the district court erred by failing to treat defendant's prior conviction under Ohio law for "using a motor vehicle to flee police" as a crime of violence).

a prior violation of fourth-degree fleeing and eluding instead of causing an accident or fleeing in a 35-mile-per-hour zone." *Id.* at 583-84.

Under the rule enunciated in *Martin*, it was unnecessary for the *Martin* panel to go beyond the statutory definition and consider *Shepard* sources. *See generally US v. Armstead*, 467 F.3d 943, 947-48 (6th Cir. 2006) ("[S]ince *Shepard* . . . the sentencing court must, *first*, decide whether the statutory definition, by itself, supports a conclusion that the defendant was convicted of a crime of violence" and only if that inquiry is not conclusive should the court look to the *Shepard* sources) (emphasis added). Thus, *Martin* arguably contradicts *itself* by failing to apply its own unqualified characterization of all Michigan fleeing and eluding offenses as inherently and necessarily violent. It is easy to see how the *Foreman* panel might have misconstrued *Martin* – or focused on *Martin*'s misapplication of its own rule rather than *Martin*'s statement of the rule itself. Guidance from our Circuit sitting *en banc* would be helpful.

In any event, because *Martin* is a published decision, to the extent that *Foreman* (2007) is inconsistent with the general rule enunciated in *Martin*, this court is obligated to follow the earlier decision's clear general rule rather than *Foreman*'s later characterization thereof. *See generally Blair v. Henry Filters, Inc.*, – F.3d –, –, 2007 WL 2983158, *5 (6th Cir. 2007) ("Reported panel decisions are binding on subsequent panels.") (quoting 6th Cir. R. 206©). In other words, when two published panel decisions reach irreconcilable conclusions, the earlier decision controls. *See, e.g., US v. Abboud*, 438 F.3d 554, 567 (6th Cir.) ("These two lines of cases directly conflict and cannot be reconciled. Because this Court decided *Rosenbarger* before *Woods*, *Rosenbarger* controls.") (citing *Salmi v. HHS*, 774 F.2d 685, 689 (6th Cir. 1985) ("A panel of this Court cannot overrule the decision of another panel. The prior decision remains controlling authority unless an inconsistent

decision of the United States Supreme Court requires modification or this Court sitting en banc overrules the prior decision.")), *cert. denied*, – U.S. –, 127 S.Ct. 446 (2006); *US v. Patterson*, 145 F. App'x 988, 993 (6th Cir. 2005) ("To the extent that the opinion in *Bolka* [6th Cir. 2004] attempts to overrule *Johnson* [6th Cir. 2003]'s holding . . . , we decline to follow it.").

<u>Supreme Court Precedent Requires a Ruling that Young Qualifies for ACCA Enhancement</u>

Finally, no matter how one interprets and applies our Circuit's decisions in *Martin*, *Foreman*, and *Collier*, they must yield to *James v. US*, – U.S. –, 127 S.Ct. 1586 (2007) (Alito, J., joined by Roberts, C.J., and Kennedy, Souter & Breyer, JJ.).[8][9] In that decision, the United States Supreme Court did not merely clarify or reinforce *Taylor*'s command to use a categorical approach when determining whether a crime is violent, it strengthened that approach. That is, where some violations of a statute pose a serious risk of physical injury to another person and some violations do not, *James* warns against too readily concluding that a particular, *atypical* violation of the statute is not violent.

---

[8]

The Supreme Court handed down *James* on April 18, 2007, and the Sixth Circuit issued *Collier* on July 12, 2007. The *Collier* panel acknowledged *James*, but did not particularly focus on *James*' reinforcement and strengthening of the categorical approach. It cited *James* instead for an unrelated issue that is not implicated in the instant case:

> Michigan has chosen to define escape not as a continuing offense, but as complete when the defendant leaves custody without having been discharged. A federal sentencing court considering an ACCA enhancement must take state law as it finds it, including state courts' interpretation of state law.

*Collier*, 493 F.3d at 737-37 (citing, *inter alia*, *James*, – U.S. at –, 127 S.Ct. at 1596).

[9]

Justice Scalia filed a dissenting opinion, joined by Justices Stevens and Ginsburg. *See James*, – U.S. at –, 127 S.Ct. at 1601-1610. Justice Thomas dissented on grounds unrelated to the propriety or application of the categorical approach. *See James*, – U.S. at –, 127 S.Ct. at 1611.

The Eleventh Circuit had held that James' prior Florida conviction for attempted burglary constituted a violent felony for purposes of the ACCA, and the Supreme Court affirmed. To understand the context for *James*' fortification of the categorical approach, it is useful first to consider the particular offense at issue there. The Supreme Court wrote:

> The pivotal question, then, is whether overt conduct directed toward unlawfully entering or remaining in a dwelling, with the intent to commit a felony therein, is "conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii).
>
> In answering this question, we turn to the statutory language for guidance. * * * In this case, we can ask whether the risk posed by attempted burglary is comparable to that posed by its closest analog among the enumerated offenses – here, completed burglary. [citation to *Taylor* omitted]
>
> The main risk of burglary arises not from the simple physical act of wrongfully entering onto another's property, but rather from the possibility of a face-to-face confrontation between the burglar and a third party – whether an occupant, police officer, or a bystander – who comes to investigate. That is, the risk arises not from the completion of the burglary, but from the possibility that an innocent person might appear while the crime is in progress.
>
> Attempted burglary poses the same kind of risk. * * *

*James*, – U.S. at –, 127 S.Ct. at 1594-95. The Court then rejected James' argument "that is not enough that attempted burglary 'generally' or in 'most cases' will create a risk of physical injury to others." *James*, – U.S. at –, 127 S.Ct. at 1596-97. The Court held that if the ordinary or typical instance of an offense poses a serious risk of physical injury to another person, a conviction for that offense must be considered a violent crime. The Court explained,

> One could, of course, imagine a situation in which attempted burglary might not pose a realistic risk of confrontation or injury to anyone – for example, a break-in of an unoccupied structure located far off the beaten path and away from any potential intervenors. But ACCA does not require metaphysical certainty. Rather, § 924(e)(2)(B)(ii)'s residual provision speaks in terms of a "potential risk." These are

-17-

> inherently probabilistic concepts. [footnote omitted] Indeed, the combination of the two terms suggests that Congress intended to encompass possibilities even more contingent or remote than a simple "risk", much less a certainty. * * *
>
> James' argument also misapprehends *Taylor*'s categorical approach. We do not view that approach as requiring that every conceivable factual offense covered by a statute must necessarily present a serious potential risk of injury before the offense can be deemed a violent felony. * * *
>
> Rather, *the proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another.* One can always hypothesize unusual cases in which even a prototypically violent crime might not present a genuine risk of injury . . . . But that does not mean that the offenses . . . are categorically nonviolent.
>
> *As long as an offense is of a type that, by its nature, presents a serious potential risk of injury to another, it satisfies the requirements of § 924(e)(2)(B)(ii)'s residual provision.* Attempted burglary under Florida law – as construed in [Florida case law] to require an overt act directed toward entry of a structure – satisfies this test.

*James*, – U.S. at –, 127 S.Ct. at 1597 (emphasis added).

For the reasons stated by our Circuit in *Martin*, 378 F.3d at 582-83, Michigan fleeing and eluding (under former M.C.L. § 257.602A3 or the current M.C.L. § 750.749a) is "by its nature, [a type of offense that] presents a serious potential risk of injury to another," *James*, 127 S. Ct. at 1597. Because "the conduct encompassed by the elements of" fleeing and eluding, "in the ordinary case, presents a serious potential risk of injury to another," fleeing and eluding is a violent offense under the ACCA's residual provision.[10] It is neither necessary nor proper to consider the sources formerly

---

[10]

*Cf. Perez-Munoz v. Keisler*, – F.3d –, 2007 WL 3257182 (5th Cir. Nov. 6, 2007), for an appropriate application of *James*'s "ordinary case" test, albeit outside the ACCA context. *Perez-Munoz* considered whether a conviction for injury to a child in violation of Texas Penal Code § 22.04(a)(3) was a crime of violence under the Immigration and Nationality Act ("INA"), 18 U.S.C. § 16(b), "any other offense that is a felony and, by its nature, involves a substantial that physical force against the person or property of another may be used in the course of committing the offense." The panel wrote as follows:

> Petitioner argues that, even if the offense is pared down [by reference to the

known as *Shepard* sources to make this determination. *See US v. Davis*, 482 F.3d 282, 285 (5th Cir. 2007) ("When determining whether a prior conviction satisfies the residual clause, we consider 'whether the elements of the offense are of the type that would justify its inclusion within [that] provision without inquiring into the specific conduct of this particular offender.' *Because we cannot look to the particular facts of this case*, Davis's contention that his particular convictions do not qualify as violent felonies because he committed unarmed robberies fails.") (emphasis added) (quoting *James*, 127 S.Ct. at 1594); *US v. Rebilas v. Keisler*, – F.3d –, –, 2007 WL 3226503, *1 (9th Cir. 2007) ("Under the *Taylor* categorical approach, this court must look to 'the ordinary case' that is prosecuted by the state . . . .") (citing *James*, 127 S.Ct. at 1597).[11]

> indictment] so that we can conclude that petitioner committed the offense by intentional act, this does not necessarily mean that a substantial risk of physical force will be presented. Petitioner argues that this is true because he can advance examples of methods by which this offense could be committed by intentional act without the use of physical force. He gives as examples putting poison or other harmful substances in a child's food or drink. Therefore, petitioner argues[,] a conviction under this pared-down offense is not by its nature a crime of violence.
>
> \* \* \*
>
> [W]e conclude that Perez's argument is without merit. Every intentional act causing injury to a child need not be violent for a violation of this part of the pared-down statute to be a crime of violence by its nature. As the Supreme Court stated in *James*, "the proper inquiry is whether . . . ."
>
> We are satisfied that, in the ordinary case, when the defendant is charged with causing bodily injury to a child by an intentional act, the perpetrator uses or risks the use of physical force in committing the offense. Being able to imagine unusual ways the crime could be committed without the use of physical force does not prevent it from qualifying as a crime of violence under [18 U.S.C.] § 16(b).

*Perez-Munoz*, – F.3d at –, 2007 WL 3257182 at *5-6.

[11] *James*'s admonition that we may not "inquir[e] into the specific conduct of this particular offender" arguably leaves little room for consideration of *Shepard* sources. *See also James*, – U.S. at –, 127 S.Ct. at 1594 (when making an ACCA determination under the categorical approach, a court "looks only to the fact of conviction and the statutory definition of the prior offense, and [does]

**ORDER**

For the foregoing reasons, this court previously **DETERMINED** that defendant Young has three prior violent-felony convictions, which qualifies him for the ACCA sentence enhancement.

Accordingly, this court orally **DENIED** Young's motion to dismiss the notice of ACCA enhancement, in open court, at the conclusion of the hearing on Thursday, November 1, 2007.

November 16, 2007

/s/ Paul L. Maloney_____

Paul L. Maloney
United States District Judge

---

not generally consider the particular facts disclosed by the record of conviction.").

In other words, *James* may have significantly modified *Shepard*, which expressly authorized courts, in certain circumstances, to examine documents beyond the statute that defines the offense (e.g., the charging document, plea agreement, plea colloquy transcript, or "some comparable judicial document", *see* 544 U.S. at 26) to determine whether the defendant's particular violation of the statute was violent. *See generally US v. McCall*, – F.3d –, –, 2007 WL 3240548, *1 (8th Cir. 2007) (Loken, C.J.) ("After oral argument, the Supreme Court filed its opinion in *James* . . . , which may alter somewhat the legal landscape."). The court notes that two members of the five-member *James* majority were not yet on the Court when *Shepard* was decided in 2005: Chief Justice Roberts and Justice Alito.

On the other hand, several of our sister circuits have issued published post-*James* decisions that continue to apply *Shepard*. *See US v. Cadieux*, 500 F.3d 37, 47 (1st Cir. 2007) (stating, post-*James*, "as appellant concedes, under *Shepard*, we can look at the indictment"); *US v. Rosa*, – F.3d –, –, 2007 WL 3146045, *16 (2d Cir. 2007) ("[W]e think it clear from the plea transcript that neither Rosa nor the court understood Rosa to be admitting that what was displayed was an actual firearm. Thus, the evidence the district court relied on here seems to be less reliable than that on which the district court relied in *Shepard*, and which the Supreme Court found unsound. The district court's conclusion that Rosa was subject to the ACCA's fifteen-year mandatory minimum therefore relied on an improper factual finding based on evidence outside the scope of what is permitted by *Shepard*."); *US v. Nevels*, 490 F.3d 800 (10th Cir. 2007).

The court acknowledges that "[i]mplied overrulings . . . are disfavored." *Cooper v. MRM Investment Co.*, 367 F.3d 493, 507 (6th Cir. 2004) (Ann Aldrich, D.J., by designation) (citations omitted). In any event, this court need not decide whether the Supreme Court intended *James* to overrule or modify *Shepard*. This court is obligated to follow *James*, and *James* counsels the conclusion that Michigan fleeing and eluding is categorically a crime of violence.